## McMAHON v. THORNTON.

### No. 3388.

Court of Civil Appeals of Texas. El Paso.
June 11, 1936.

Rehearing Denied July 30, 1936.

J. U. Sweeney, R. B. Rawlins, and M. Scarborough, all of El Paso, for appellant.

Harrison, Scott & Rasberry, of El Paso, for appellee.

WALTHALL, Justice.

We find the statement of the nature and result of the suit as made in appellee's brief substantially correct, and adopt same as the statement of this court.

On May 15, 1929, appellee was the owner in fee of the north 85 feet of lots 11 and 12 in block 240 of Campbell's addition to the city of El Paso, Tex., and on that date sold the land to Harry Earle for $5,000, the sum of $1,000 being paid in cash by the purchaser, and as evidence of the debt for the balance owing on the purchase price Earle executed to Thornton a vendor's lien note for $4,000, bearing even date with the deed, providing for interest at the rate of 8 per cent. per annum, interest payable monthly, the note being payable in monthly installments of $50 each beginning June 15, 1929, stipulating that failure to pay any installment when due would, at the election of the holder,

mature the balance owing thereon, and expressly acknowledging a vendor's lien against the property to secure the note. The deed of conveyance retained the vendor's lien to secure payment of the note.

.Earle never sold the property during his lifetime. He died intestate in El Paso county on August 24, 1931, and appellant was appointed and qualified as temporary administrator of his estate, taking immediate possession of the property involved in this suit. Thereafter appellant became permanent administrator and has been in possession of the property ever since.

At the time of Earle's death he was indebted on the note for the sum of $3,-312.24, this being agreed to by the parties on the trial in the district court and also admitted by appellant in his answer. Earle discharged all monthly payments that came due during his lifetime. Appellee never at any time presented the note or any claim based thereon to appellant as administrator of the Earle estate for allowance as a claim against the estate, but appellant, as administrator, paid the monthly installments that became due on the 15th days of September, October, November, and December, 1931, and paid all installments due in the years 1932 and 1933.

No payments of any kind were made by appellant in January, February, March, and April, of 1934. In the latter part of April, 1934, the property was leased to one Link for a period of twelve months, beginning May 1, 1934, at a monthly rental of $25, and appellee agreed with appellant to reduce the monthly payments on the note to $25 during the term of the lease to Link, but there was no waiver or postponement of the. payments in default, and upon the expiration of the twelve months' lease to Link the $50 monthly payments called for by the note were to be resumed and the delinquent payments were to be paid on or before the expiration of the lease to Link.

After the lease to Link expired, and on or about May 14, 1935, appellant tendered appellee a check for $25 as a monthly payment on the note. Appellee refused to accept this check and notified appellant that because of default in making payments he had elected to declare the debt matured, and he demanded payment of the balance owing on the note within one week. Appellant was also told he had not paid taxes on the property but had permitted several hundred dollars in delinquent taxes to accumulate and that appellee would no longer consent to carrying the contract in this condition.

Appellee did not file suit until July 13, 1935. Prior to the filing of suit, appellant made no payments, nor did he offer to pay the note or the taxes which he had permitted to become delinquent.

The unknown heirs of Harry Earle, deceased, and their heirs or legal representatives, were made parties defendant, were cited by publication, and were duly represented by counsel appointed by the court.

The first count in appellee's petition was in the ordinary form of trespass to try title, and this was followed by pleading in the alternative to foreclose the vendor's lien.

Appellant answered by demurrer, plea of not guilty, that appellee failed to give notice of his election to rescind the contract of sale, admitted the debt of Earle to appellee as evidenced by the note, alleged the payments on the note hereinabove set out, admitted nonpayments during certain months, alleged that by accepting the payments appellee had waived his right to rescind the contract of sale with Earle, and had elected by his actions to recognize the title of appellant. He further pleaded that if the court should hold appellee had not waived his right to rescind, then he should not be permitted to do so without tendering to appellant all amounts paid by him, since rescission without such tender would be inequitable, as the property had a reasonable value of $4,000 and the balance owing on the debt at the time suit was filed was $2,414.01.

Appellee, by supplemental petition, excepted to appellant's allegations as to acceptance of payments constituting a waiver of his right to rescind and as being an election to recognize appellant's title, because same were in the nature of a plea in abatement and had not been pleaded in due order; and to appellant's allegations of certain payments for taxes and insurance, as appellant was obligated to pay these charges, and appellee alleged the payment by him of state, county, and city taxes for five years on account of appellant's failure and refusal to pay such taxes, and asked that if for any reason he be denied the right to rescind the contract of sale with Earle, that he be subrogated to the liens for taxes paid by him, in addition

to the lien for the unpaid balance on the purchase price of the property.

The case was tried to the court without the intervention of a jury, and on October 30, 1935, the court rendered judgment canceling and rescinding the contract of purchase between appellee and Earle and decreeing that appellee recover title and possession of the property from all defendants, and canceling the vendor's lien note and ordering same delivered to appellant; all costs being taxed against appellee.

After all evidence had been introduced and both sides had closed, the court permitted appellant to file a trial amendment alleging that payments made by him were made by mistake and he should have a refund from appellee of $1,700. Appellee excepted to the action of the court in permitting this trial amendment to be filed after the case had been submitted to the court for decision and judgment, and because same presented new issues and did not plead mutual mistake but only a mistake on the part of appellant, and did not allege fraud on the part of appellee in accepting payments made by appellant.

This appeal is prosecuted by McMahon, administrator, alone, as the unknown heirs of Harry Earle, deceased, and their heirs or legal representatives are not complaining of the judgment rendered by the trial court.

### Opinion.

■ Appellant submits error in that appellee did not plead his chain of title, and refers to article 1977, Revised Civil Statutes of 1925; there being nonresident or unknown defendants cited by publication. In 1931 the Forty-Second Legislature by chapter 213 § 1, page 363 (Vernon's Ann.Civ.St. art. 1977), amended article 1977, omitting the requirement that plaintiff plead his title. We need not consider cases referred to decided prior to the amendments. We might note, however, that in none of the cases referred to is the vendor's superior title involved.

■ We are not advised by appellants' pleading what party or parties are omitted as necessary parties to the suit. Such omission, if any, is not apparent on the face of appellee's petition. The failure to make necessary parties, where not apparent on the face of the petition, should be presented by a verified plea in abatement, thus specially pointing out such omission and the interest of the omitted party. 32 Tex.Jur. p. 121 et seq., and cited cases. The record shows that it was agreed in open court on the trial that appellee had fee-simple title to the land involved on the date it was sold to Harry Earle.

■ Appellant submits that a portion of the purchase money had been paid by Earle before his death, and by the administrator after Earle's death; that under such circumstances it would be inequitable and contrary to the decisions of our court to permit a rescission of the contract of sale.

Without quoting the evidence, the facts are: Harry Earle died intestate in August, 1931, and appellant McMahon was appointed and qualified as the administrator of Earle's estate in September, 1931; appellee Thornton wrote to McMahon's attorney, demanding payment of $50 monthly payments on the Earle indebtedness on the property involved here; McMahon made the monthly payments thereafter until January 1, 1934; no payments were made in January, February, March, and April of 1934; in May, 1934, and for one year next thereafter McMahon made monthly payments of $25 with the consent and approval of Thornton; Thornton agreed to the leasing of the property for $25 per month for the one year only and to accept the rental payment as payment on the note. The probate court at the instance of appellant approved the reduced lease and payment; in October, 1931, Thornton made a bid to McMahon for the property of $5,100 cash, including the debt at that time of $3,100; an offer of $7,400 was bid on the property and both offers declined. Thornton explained in his testimony why he agreed to accept the $25 reduced monthly payments for one year (to give appellant an opportunity to sell the property), at the expiration of the one year, the end of the lease term, the reduced monthly payments would end. Appellant had not paid any taxes, state, county, or city, amounting to some $581, on the property for five years; at the end of the lease term a check for $25 was sent to Thornton as a payment on the note for May, 1935; the check was not accepted and returned to appellant with a letter stating the reduced payment period had expired, and demand made for payment of balance owing, and if not made suit would be filed. This suit was filed on July 13, 1935. At

the time of the filing of the suit the balance of the indebtedness to appellee was unpaid, and the taxes were unpaid; the seller, appellee, in the deed contract, was the owner and holder of the original vendor's lien note.

Under the express reservation of the vendor's lien in Thornton's deed to Earle, the superior title to the land remained in Thornton until the purchase-money notes were paid. On failure to meet the payments on the notes, the unpaid purchase money for the land, the possession of the land by McMahon would become wrongful, and being without title and holding a mere contract for title conditioned on payment of the notes, and failing and refusing to pay Thornton would be entitled to rescind the contract of sale, and he would not be compelled to seek redress by a suit for the balance due upon the purchase money, unless, as claimed by appellant, a rescission, under the facts, would be inequitable.

Appellant refers to Maverick v. Perez, et al. (Tex.Com.App.) 228 S.W. 148. That suit presented a cause of action for rescission of the deed and a recovery of the land, an equitable proceeding as is the one at bar. The facts of the case, however, are so different from the present case as to make it inapplicable. In that case the consideration agreed to be paid for the land was $700 and the purchaser had paid the taxes and all of the consideration except $70. The purchase of the land was made in 1880, and the unpaid balance was due on or before one year after date, the deed and note reserving a vendor's lien. The suit was brought in 1914. During the period between the sale and the suit, defendants had expended $2,500 in improving the value of the land, and the value of the land without the improvements had enhanced to over $5,000; the defendant's vendees were willing to pay the balance due and offered to mortgage the land to secure the debt. Besides other pleas, the defendants prayed to recover the value of their improvements should judgment be against them. The jury found that $86.40 was due on purchase-money notes.

In discussing the case, Judge McClendon said the undisputed facts show that at the time the suit was instituted the right of rescission had been lost, stating the reasons for so holding.

In this case Thornton had taken no action to secure the payment of his note other than as stated.

We understand the authorities to hold that the right of the vendor of real estate conveyed under an executory contract, the right to rescind and recover the property upon the strength of his superior title, while an alternative remedy and not an absolute one, his right remains, unless lost or waived, and may be enforced when the vendee repudiates the contract by his failure and refusal to perform his part of the contract by payment or offer to pay the balance of the purchase money due; and especially would that be the rule where the vendee has made no improvement on the land, has not paid the taxes on the land for many years, and has been in possession of the land since its sale in May, 1929, and by such failures has necessitated such action.

The evidence shows that the market value of the land in controversy was $1,000 less at the time of the suit than at the time of its sale to Earle. In answer to the question to Mr. Davenport, appellant's witness, and the only witness, on the value of the property, "Do you think you could find a quick sale for it, whereby you could get a three thousand dollar cash payment?" the witness answered: "I would say that unless you could find someone that could use the property, that you could not sell it for cash at this time for any price."

We recognize that the suit is an equitable proceeding, and that the rules of substantive law in such proceedings must be observed. But where the appellant opposes rescission and fails to pay, or offers to pay, the balance of the purchase money due and fails to account for the value of the use of the property, and has failed to pay the taxes and makes no offer to pay the taxes, and where the probable value of the use of the property and the unpaid taxes are about equal to the payments made, and where the value of the property has materially declined, in view of these facts we have concluded that a cancellation would not be inequitable and may be had without an offer to return the money paid. Moore v. Giesecke, 76 Tex. 543, 13 S.W. 290; Aniol v. Aniol (Tex.Civ.App.) 62 S.W.(2d) 668 (par. 10). So far as the record shows, appellee has fully performed his part of the contract, has done nothing to waive his right to rescind, the contract

is executory, and the vendee, Earle, while living, and appellant as administrator of his estate, has made default in the payment of the purchase money and in the particulars above stated.

On September 16, 1931, appellee, in a letter to the attorney for appellant, requested that a $50 payment then due be made on the note. Payments were made as requested. The payments were approved by the probate court. Appellant submits that such payments made on demand, were not voluntary payments as alleged by appellee, and that the acceptance of such payments estopped appellee from declaring a rescission.

The facts are that in 1932 appellee wrote a letter to the attorney for the administrator advising him that the administrator had left a check with the defendants for $50 covering the payment then due on appellee's note, and left with attorney the propriety of making the $50 payment direct to appellee; the note then being in the bank for collection. The letter stated that appellee was the owner of the note and asked the attorney to let him (appellee) have the check to apply on the payment then due, which the attorney did, and the payment was so made, as were subsequent payments as they became due. The property involved here was the only property of the Earle estate, and no revenue was derived from any source other than from said property; subsequently the property was leased for one year to a Mr. Link for $25 per month with appellee's approval, and with the approval of the probate court secured by appellant; still later, in October, 1931, appellee made the offer to appellant to buy the property, as above stated, stating his bid.

In November, 1931, appellee wrote a letter to appellant's attorney to the effect that, confirming a conversation that morning: "When Judge McClintock (the then Probate Judge) advised me Tuesday that he had a bid of $7,400.00 for the Earle property, I advised him to go ahead and sell it, and then cancelled my plans to buy it, and temporary arrangements to finance the deal," and advised that further negotiations to buy would have to be on a new bid, etc.

Appellee, at no time, other than as above, did anything to waive, ratify, acquiesce in, or affirmance of, any proceedings had in the probate court, or out of it, except to receive and apply on the note payments made. He at no time presented or filed his note with the appellant as administrator of the Earle Estate, or in the probate proceeding had in the probate court.

We have found no case which holds that a mere demand and acceptance of payments of amounts due constitute a waiver of the right to rescind, or such affirmance of the contract of sale as to destroy the right to rescind. It is true, as said by the Commission of Appeals in Maverick v. Perez, supra, that plaintiff had accepted demand payments of the balance up to 1888. The court held that under the facts of that case stated above the right of rescission was lost. There was no intimation in the opinion, however, that the mere demand for payments of any unpaid balance due, and its acceptance, would defeat the right to rescind, and we think such would not be the rule.

There is no merit in the proposition that appellee should be required to refund the payments made, for the reason that same were by mistake, though made in good faith and with the approval of the probate court.

Appellant complains that no notice was given of appellee's intention to rescind except the filing of the suit.

Appellant had written notice from appellee's attorneys. At the close of a letter demanding payment of the amount due the following occurs: "Mr. Thornton is dissatisfied with the condition of this loan and has placed the note in our hands for collection and with instructions to file suit on the note and to foreclose on the property unless the note is paid in full within one week from this date."

We think that where appellee had two remedies, suit on the note and foreclosure of the lien, or suit to rescind, the notice by citation is sufficient, in connection with the suit filed.

Without discussing other propositions, they have been considered and are overruled.

Finding no reversible error, the case is affirmed.