JAMES A. HOLLIS ET AL. v. JOHN C. SMITH.

(Case No. 5321.)

1. IMPROVEMENTS — POSSESSOR IN GOOD FAITH.— One who purchases land from a vendor, to whom no patent had issued, but who had contracted with the state for the land under a law which authorized a forfeiture on non-payment of instalments, and against whom a forfeiture was declared, is charged with notice that his vendor is not the true owner, and he cannot be such a possessor in good faith as will entitle him to pay for improvements, as against a patentee from the state, who secured title after the judgment of forfeiture.

2. SAME.— No one who holds under an executory contract can recover compensation for improvements, on the annulment of the contract, on the sole ground that the vendor in such a contract has refused or failed to pay for the land as he agreed to do.

APPEAL from Comanche. Tried below before the Hon. T. B. Wheeler.

*Lindsey & Hutchison,* for appellants, cited: Heirs of Gatlin *v.* Organ, 57 Tex., 11; French *v.* Grenet, 57 Tex., 273; Hill *v.* Spear, 48 Tex., 583; Hutchins *v.* Bacon, 46 Tex., 409; Dorn *v.* Dunham, 24 Tex., 366; Sartain *v.* Hamilton, 12 Tex., 219.

*T. L. Hutchison,* for appellee, cited: Hatchett *v.* Conner, 30 Tex., 113; Miller *v.* Brownson, 50 Tex., 597; Rogers *v.* Bracken, 15 Tex., 568; Harrison *v.* Boring, 44 Tex., 255; Dorn *v.* Dunham, 24 Tex., 381; Hill *v.* Spear, 48 Tex., 583; Heirs of Gatlin *v.* Organ, 57 Tex., 13; Acts 1874, secs. 7–9 inclusive, p. 148; R. S., arts. 4068–71 inclusive; Johnson *v.* Brown, 25 Tex. Sup., 127.

STAYTON, ASSOCIATE JUSTICE.— This action was instituted by appellee to recover the southwest quarter of section 44, set apart to the Deaf and Dumb Asylum, for which he holds a patent from the state.

Under the act of April, 1874 (General Laws, p. 142), this quarter section was purchased by John F. Falls, whose right appellee acquired by purchase; and under the same law H. W. Sublett purchased from the state the southeast quarter of the same section.

It appears that under the field-notes of the section, through which Falls and Sublett claimed, the section was not divided by lines runing at right angles as required by law, and that, in consequence of this, land which would have been within the southwest quarter had the lines been run as the law required was in the southeast quarter, and the land so situated, embracing about four and a quarter acres, was sold by Sublett, and through that conveyance the appellants claim that quantity of the land on which improvements were made by themselves or those under whom they claim.

Sublett failed to pay the instalments as they fell due on the quarter bought by him, and in accordance with the law the state recovered a judgment against him on February 14, 1880, declaring a forfeiture; and a similar judgment was obtained against Falls September 4, 1882.

After these judgments were rendered, Sublett repurchased the southeast quarter and the appellee repurchased the southwest quarter;

and in the patent issued to him the land in controversy is embraced, and it appears correctly so, the section being divided as required by law.

There are but two questions involved in the case, and in disposing of them we will not follow the assignments of error.

The appellants claim title to the four and a quarter acres of land claimed by them through a conveyance from Sublett made before the declaration of forfeiture in favor of the state.

That judgment destroyed every vestige of claim or right which Sublett or those claiming under him had prior to its rendition; hence it is unimportant that the land in controversy may have been embraced within the field-notes which were sent to the general land office under his first purchase, even if that office had recognized them as correct.

It is not shown that either Sublett or the appellants have acquired any right to the land in controversy since the judgment of forfeiture entered against Sublett; but under the repurchase made by the appellee a patent has been issued to him for the southwest quarter, which embraces the land in dispute, and that must be held to confer upon him the title.

If the validity of the judgment declaring the forfeiture against Falls, whose right the appellee had acquired before that judgment, could be inquired into in this cause, such inquiry would be unimportant, for the appellants claim no right through him.

The appellants claim that they were possessors in good faith, and that they and those through whom they claim made improvements on the land in dispute, the value of which they seek to recover.

As evidence of title, appellants offered a deed made by Sublett to Porter in 1876, for the land in dispute, and they proposed to prove, in connection with the deed, that Porter entered upon the land immediately after his purchase and made valuable improvements thereon, and that they held under Porter.

The court excluded this evidence, and if under the facts they would not have been entitled to compensation for improvements made, it is not necessary to consider the various objections made to the testimony.

The appellants claim through a contract which Sublett made with the state, by which he agreed to pay the sum fixed as the price of the land in named instalments; if he did this, the state agreed to issue to him a patent for the land, and if he failed to meet these instalments the law provided that his right might be forfeited and so declared by a judgment of a district court.

The facts arose which authorized the forfeiture and it was properly declared.

Can one purchasing land which he knows to be held by such a tenure suppose himself to be the true owner? Can he be ignorant that the superior title is in another, and that this can be obtained only by a compliance with a contract purely executory, and that upon failure to comply a forfeiture will occur?

Does not a person so purchasing assume the risk of failure in his vendor to make the requisite payments, and might he not protect himself by making the payments? Can such a purchaser have other or greater right than had his vendor?

It is certainly true that neither Sublett, nor any one claiming under him, upon his failure to pay the purchase money, could have asserted as against the state a claim for improvements made before the declaration of forfeiture or at any other time, and it would be strange indeed if such a claim could be asserted against one holding directly from the state through title accruing subsequently to the declaration of a forfeiture, made for the very reason that the person making the improvement, or those under whom such person claims, have failed to pay for the land.

Cases doubtless may arise in which a holder under an executory contract to purchase land may be entitled, as against persons holding adversely to his vendor, to compensation for improvements made in good faith; and cases may arise calling for an adjustment of equities growing out of improvements made by a person holding under executory contract, as between himself and his vendor, where the former is not in default and there is failure of title in the latter.

It is not, however, believed that in any case one holding under executory contract can recover compensation for improvements made, upon the annulment of the contract, on the sole ground that the vendor in such a contract has refused or failed to pay for the land as he agreed to do. Allen v. Mitchell, 13 Tex., 377; Estes v. Browning, 11 Tex., 237.

We find no error in the judgment and it is affirmed.

AFFIRMED.

[Opinion delivered May 22, 1885.]