*436
 
 ODOM, Justice.
 

 M. F. Hine purchased at tax sale Lot 8, Sec. 31, T. 13 S., R. 10 E., containing 35 acres, on May 26, 1901. His purchase was evidenced by a tax deed executed by the tax collector, which deed is duly recorded in the conveyance records of St. Mary Parish, where the land is situated.
 

 Mr. Hine died a few years later, and the land passed to the plaintiffs by inheritance. His heirs, the plaintiffs, alleging that the South Coast Corporation claimed to own the property and that Dolph Parro claimed to own a mineral interest in the land, and alleging that neither the plaintiffs nor defendants had possession of the land, brought this suit to try title under Act 38 of 1908. The suit was later converted into a petitory action.
 

 Plaintiffs alleged that the property was adjudicated to the State of Louisiana on July 31, 1903, for the non-payment of the taxes for the year 1902 due by Emmet Alpha, and that the property was redeemed by Alpha, who subsequently quit-claimed it to them.
 

 The defense to the suit is (1) that plaintiffs have no title because the tax sale to M. F. Hine, from whom they inherited, was null, void, and of no effect, and (2) that defendant and its authors in title have in good faith owned and possessed the land for more than 30 years. They pleaded the prescriptions of 10 and 30 years.
 

 There was judgment in favor of plaintiffs, decreeing that they owned the land. The defendant appealed.
 

 For the year 1900, Lot 8, Sec. 31, T. 13 S.,. R. 10 E., the property here involved, was assessed to “New Orleans Pacific Railway Co.” This is shown by a certified copy of the assessment rolls. Plaintiffs filed in evidence a certified copy of the tax deed, executed by the sheriff and ex officio tax collector of the Parish of St. Mary, conveying this property to M. F. Hine. The tax deed is legal in form, signed by the sheriff and ex officio tax collector, and was recorded in the conveyance records-immediately following the date of its execution. The deed recites that the property was assessed to the “New Orleans, Pacific-Railway” for the year 1900, and that the taxes thereon became delinquent on the 31st day of December of that year; that the sheriff made out and mailed a notice of delinquency to the said “New Orleans. Pacific Railway” by registered letter in. conformity with Act 170 of 1898, under which the sale was made; that, the said' New Orleans Pacific Railway having failed to pay the amount of taxes, interest,, and costs due by it as shown by the assessment rolls for the year 1900, the sheriff and ex officio tax collector seized and advertised the property for sale in the St. Mary Banner, the official journal of the Parish of St. Mary, a weekly newspaper published in the Town of Franklin; that said advertisement appeared in five consecutive-issues of that paper, the first advertisement appearing in the issue dated April 20, 1901,, and the last in the issue dated May 25, the sale to take place on May 25.
 

 The deed recites that the amount of taxes, interest, costs, etc., due was $4.88; that in accordance with law and the terms
 
 *438
 
 of said advertisement the property was •offered for sale at the principal front door •of the courthouse in the Parish of St. Mary on the 25th day of May, 1901, and that, there being no bidder for less than ■the whole of said property, “M. F. Hine, a resident of the Parish of St. Mary, bidding the amount of the taxes, interest and costs, * * * which amount the said M. F. Hine” paid in cash, the receipt of which is acknowledged, “the said property was adjudicated to the said M. F. Hine”.
 

 The deed recites that, pursuant to law and in accordance with the said adjudication, all right, title, and interest which the New Orleans Pacific Railway Company has or had in said property was sold, transferred, and delivered to the said M. F. Hine, The deed was signed by the sheriff and ex officio tax collector in the presence •of two witnesses.
 

 To support their title to the land, plaintiffs offered and filed this tax deed in evi-dence. They filed in evidence also the ■deed executed by the sheriff and tax collector showing the forfeiture of the land to the state in 1903 in the name of Emmet Alpha, a certificate showing that Alpha redeemed the property from the state in February, 1938, and a quitclaim deed executed in August, 1938, by Alpha, conveying all his right, title, and interest in the land to them.
 

 Plaintiffs base their title primarily on the tax deed to M. F. Hine. That deed, as shown above, is regular in form, and its recitals show that all the formalities of law leading up to, and connected with, the sale were complied with. Section 11, Article X, of the Constitution of 1921 provides that:
 
 “
 
 * * * all deeds of sale made, or that may be made, by the collectors of taxes, shall be received by courts in evidence as prima facie valid sales.”
 

 The settled rule is that those who hold property under tax deeds, containing recitals that all the formalities prescribed by law for making tax sales were complied with, may rely upon such deeds as prima facie evidence of valid conveyences of the property to them, and that such sales must stand until overthrown. Federal Land Bank v. Scallan, 179 La. 636, 154 So. 632; Slattery v. Heilperin, 110 La. 86, 94, 34 So. 139; Little River Lbr. Co. v. Thompson, 118 La. 284, 42 So. 938; Simoneaux v. Lumber Co., 112 La. 221, 36 So. 328; Tensas Delta Land Co. v. Sholars, 105 La. 357, 29 So. 908; Jones v. Curran, 156 La. 1055, 101 So. 415; Nebraska-Tensas Co. v. Moritz, 157 La. 174, 102 So. 195; Regina Lbr. Co. v. Perkins, 175 La. 15, 142 So. 785.
 

 Defendant alleged, and its contention now is, that the tax sale made to M. F. Hine, under which plaintiffs claim to own the property, was null because the assessment and sale were in the name of the New Orleans Pacific Railway Company, which did not own the land. That is the sole ground of its attack.
 

 The record discloses that Felix Reynaud selected this land on December 28, 1883, for the “No. Pac. Ry. Co.”, and that patent issued on March. 3, 1885. Counsel for de
 
 *440
 
 fendant argue that this grant was made to the “Northern Pacific Railway Company” and not to the “New Orleans Pacific Railway Company”. They argue that the letters “No.” were intended as an abbreviation for “Northern” and not for “New Orleans”. There is nothing in the record to show, and counsel for defendant do not now contend, that this property was ever assessed to the Northern Pacific Railway Company or that it ever paid any taxes thereon.
 

 But the record does show that for the year 1900 the property was assessed to the “New Orleans Pacific Railway Co”; that for years 1899, 1898, 1897, and 1896 it was assessed to “N. O. Pacf. Railway Co.”; that for the years 1895 and 1894 it was assessed to “New Orleans Pacific Railway Co.”; that for the years 1893, 1892, 1891, 1890, and 1889 it was assessed to “N. O. Pacific Railway Co.”; that for the year 1888 it was assessed to “N. O. P. R. R. Co.” The record further shows that the taxes were paid on the property for those years by the railroad company to which it was assessed.
 

 The assessments which we have noted above clearly show that the railway company to which the property was assessed was the New Orleans Pacific Railway Company, and there is nothing to show that the land was assessed to any one else in those years.
 

 In further support of defendant’s contention that the New Orleans Pacific Railway Company did not own the property, counsel filed in evidence a certified copy of a land patent by which the United States government conveyed to John Wilkinson certain land which counsel say is the same as Lot 8, Sec. 31, T. 13 S., R. 10 E. The land conveyed in that patent is described as “Section forty-seven in Township Thirteen South of Range nine east and Section-twenty-seven in Township thirteen South of Range Ten east”. Counsel say that Section 27 is the same as Lot 8. But there is nothing to show that. Mr. Walter Y. Kemper, a surveyor, testified that under one survey the property involved in this suit is shown “to be Lot 8 and under another a part of it is shown as Section 27”. Mr, Kemper did not say what surveys he had reference to, whether government or private. We cannot say, therefore, that the •land described in the Wilkinson patent,, where the property is designated as Section 27, is the property involved in this lawsuit. Furthermore, the Wilkinson patent was issued on October 8, 1913, many years after the property was patented to the railway company by the government as Lot 8,
 

 Under the settled jurisprudence of this state, tax deeds clothed with all the formalities prescribed by law must stand' until overthrown. Clearly defendant has failed to overthrow the M. F. Hine tax deed under which plaintiffs claim. Therefore, plaintiffs have a valid record title to the property.
 

 Defendant failed to show that its authors in title had a record or book title to the land at the- time it was sold to Hine in-1901. It does not pretend to trace its title by mesne conveyances back to the government. It traces its record title to-the tract of land it now claims to own back
 
 *442
 
 to January 2, 1892, when John J. Pringle and Stephen Duncan sold to Robert E. Rivers the following described land: “That certain tract of land known as the ‘Oxford’ Plantation, lying and being situated in the Parish of St. Mary, Louisiana, on the East side of Bayou Teche, bounded above by lands of ‘Camperdown’ Plantation — below by lands of Oaklawn Plantation, in -front or South by the Bayou Teche, and in the rear or North by the-waters of Grand Lake, and containing a superficial area of Nineteen hundred and Sixty-five acres.”
 

 On March 24, 1896, by. deed recorded on March 27, R. E. Rivers sold the property under the same description to the Oaklawn Sugar Company, which company owned it until March S, 1927, when it was sold by the sheriff in a foreclosure proceeding to certain individuals, who subsequently transferred it to the South Coast Corporation.
 

 Counsel for defendant say in argument that Lot 8, Sec. 31, T. 13 S., R. 10 E., was included in the sale by Pringle and Duncan to Rivers, and in the sale by Rivers to the Oaklawn Sugar Company. But there is nothing in the record to show that. Those deeds describe the land conveyed by metes and bounds, but no government subdivisions are mentioned. Certain maps and plats were filed in evidence, but they do not show that Lot 8 was included within the boundaries mentioned.
 

 There is some testimony in the record' indicating that Lot 8 had been considered as a part of the Oxford Plantation and that the owners of that plantation had at times not specified cut and removed timber from the land. But it seems certain that Lot 8 was never enclosed by fences with the lands comprising the Oxford Plantation. On the other hand, there is testimony in the record that Lot 8 was never considered a part of the property owned by the Oak-lawn Sugar Company. In 1914, R E. Milling made a complete abstract of all the property owned by the Oaklawn Sugar Company, and Lot 8 was not shown on that abstract as belonging to that company.
 

 There is nothing definite, therefore, on which a conclusion may be based that the defendant or any of its authors in title ever acquired a record title to Lot 8 until March S, 1927, when the property was sold by the sheriff in a foreclosure proceeding. In the sheriff’s deed, Lot 8 was specifically described as a part of the property sold.
 

 In April, 1919, the Oaklawn Sugar Company executed a mortgage covering all the property it owned, and that mortgage included by specific description Lot 8, Sec. 31, T. 13 S., R. 10 E., and the same property was sold by the sheriff in a foreclosure proceeding on March S, 1927. Based upon this sheriff’s deed, the South Coast Corporation, defendant, pleaded the prescription of 10- years acquirendi causa. At the trial of the case, counsel for defendant introduced testimony tending to show that defendant physically possessed in good faith Lot 8 from 1927 down to the present time, their argument being that, since it acquired the property in 1927 under a deed translative of title and possessed it in. good faith for more than 10 years, its title thereto is valid even if it be said
 
 *444
 
 that the plea of 30 years’ prescription acquirendi causa is not good.
 

 It thus appears. that defendant’s claim to ownership of the property involved is based upon prescription, and, as we have said, it filed pleas of prescription of 30 and 10 years.
 

 But these pleas are unavailing, for the reason that the property was forfeited to the State of Louisiana on May 30, 1903, for taxes alleged to be due for the year 1902 by Emmet Alpha, to whom the property was assessed. The forfeiture deed recites that the sheriff and ex officio tax collector for the Parish of St. Mary, acting in the name of and for the state and by virtue of the power and authority in him vested by the Constitution and laws and in pursuance of the requirements of Act 170 of 1898, mailed notice of delinquency by registered letter, as required by Section 51 of the act, to the tax debtor; that, the taxes not having been paid by the tax debtor, the property was seized and advertised for sale in accordance with law, the advertisement appearing in the St. Mary Banner, a newspaper published in the Town of, Franklin, Parish of St. Mary, from April 25, 1903, to May 30, inclusive; that there were no bidders for the property, which was assessed in the name of E. Alpha, and therefore the property was adjudicated to the State of Louisiana in accordance with Section 61, Act 170 of 1898, subject to redemption by the taxpayer or any person interested personally as the law provides. This tax forfeiture deed states specifically that all the formalities required by law leading up to and connected with tax sales and forfeitures were complied with. This tax forfeiture deed was duly filed and recorded in the conveyance records of the Parish of St. Mary.
 

 The property was not redeemed from the state until February, 1938, so that from the year 1903 until 1938 the forfeiture to the state was not disturbed. Alpha redeemed the property and quitclaimed it to the plaintiffs.
 

 Counsel for defendant argue that this tax forfeiture was invalid because E. Alpha, in whose name the property was assessed in 1902 and in whose name it was forfeited to the state in 1903, was not the owner of the property on either of those dates.
 

 There is nothing in the record to show that Alpha owned the land in 1902. Therefore the assessment of the land to him and its forfeiture in his name was an irregularity for which the forfeiture might have been successfully attacked within the prescriptive period designated by the statute and the Constitution. But the forfeiture was never attacked, and the irregularity was cured by prescription. Griffing v. Taft, 151 La. 442, 91 So. 832; Terry v. Heisen, 115 La. 1070, 40 So. 461. Prescription runs in favor of the state. Quaker Realty Co., Ltd., v. Purcell, 134 La. 1022, 64 So. 894; Norgress v. E. B. & S. P. Schwing, 128 La. 1040, 1043, 55 So. 667.
 

 As stated, defendant’s title to this property is based on prescription acquirendi causa, but its plea is unavailing, for the reason that the property was
 
 *446
 
 forfeited to the state in 1903, and the continuity of defendant’s possession was interrupted by that forfeiture. That forfeiture took place in 1903. In so far as defendant’s claim under the plea of 30 years’ prescription is concerned, its possession was interrupted long before it could have acquired the property under that plea. And, in so far as its plea of 10 years’ prescription is concerned, the fact is that, at the time it acquired the property under specific description in 1927, the forfeiture to the state in the name of Alpha was in effect and remained so until 1938, when Alpha redeemed it. Prescription does not run against the state.
 

 In the case of Armstrong v. Morrill, 14 Wall. 120, 81 U.S. 120, 20 L.Ed. 765, it was held that: “Forfeiture to the State within the period necessary to give effect to the statute, has the effect to break the continuity of adverse possession, and prevents the operation of the statute bar.” (Paragraph 7, Syllabus.)
 

 In that case the defendant claimed to have acquired certain property in the State of Virginia by adverse possession. The court found that “Beyond all doubt the lands described in the deed of Robert Morris and others to the grantors of the plaintiff, became forfeited to the State by reason of the failure to enter the same on the books of the Commissioners of the Revenue”. One of the errors complained of was: “That the court erred in the instruction to the jury that the statute of limitations [meaning the statute relating to the acquisition of property by adverse possession] ceased to run when the land became forfeited to the state.”
 

 The Supreme Court held that the instruction to the jury was correct, and in the course of its opinion said: “Argument to show that the statute of limitations ceased to run when the forfeiture attached and the title became vested in the State can hardly be necessary, as the rule that time does not run against the State has been settled for centuries, and is supported by all courts in all civilized countries.”
 

 The court further said:
 

 “Continuity of possession is also one of the essential requisites to constitute such an adverse possession as will be of efficacy under the statute of limitations. Whenever a party quits the possession the seizin of the true owner is restored, and a subsequent wrongful
 
 entry by
 
 another constitutes a new disseisin, and it is equally well settled that if the continuity of possession is broken before the expiration of the period of time prescribed by the statute of limitations, an entry within that time destroys the efficacy of all prior possession, so that to gain a title under the statute, a new adverse possession for the time limited must be taken for that purpose. [Brinsfield v. Carter, 2 Kelly, Ga., 143; Ring-gold v. Malott, 1 Har. & J., Md., 299, 316; Hall v. Gittings’ Lessee, 2 Har. & J., Md., 112.]
 

 “Beyond all question the case [last cited] presented the same question as that involved in the case before the court, and the decision was that the forfeiture to the
 
 *448
 
 State within the period necessary to give effect to the statute did have the effect to break the continuity of adverse possession, and prevented the operation of the statute bar. Taylor v. Burnsides, 1 Grat. [Va., 165] 190.
 

 “Viewed in any light the court is of the opinion that there is no error in the record. Judgment affirmed.”
 

 “Where, during the running of the statute of limitations in favor of the adverse occupant of land, the land is forfeited to the state for taxes, the general rule is that continuity of possession is interrupted for the reason that the statute of limitations does not run against' the state in the absence of some special provision to that effect.” 2 C.J. p. 108, § 162; 2 C.J.S., Adverse Possession, § 152.
 

 “While there is one decision [Harrison v. Dolan], 172 Mass. 395 [52 N.E. 513] maintaining the contrary doctrine, the weight of authority is to the effect that the running of the statute of limitations in favor of one holding by adverse possession is interrupted by a sale for taxes.” 1 Cyc. p. 1018.
 

 The rule announced in the case of Armstrong v. Morrill, U.S., supra, has been followed generally. Reusens v. Lawson, 91 Va. 226, 21 S.E. 347; Monroe v. Morris, 7 Ohio 262, pt. 1; Daveis v. Collins, C.C., 43 F. 31; Lawless v. Wright, 39 Tex.Civ.App. 26, 86 S.W. 1039.
 

 The rule is well established by our own jurisprudence. In re August Chabaud Praying for Possession, 3 Orleans App. 420, decided May 28, 1906; Home Land Co. v. Bryant, 6 La.App. 130; Quaker Realty Co. v. Maierwatt Realty Co., 134 La. 1030, 64 So. 897; Wall v. Rabito, 138 La. 609, 70 So. 531.
 

 In the Quaker Realty Co. case [134 La. 1030, 64 So. 898], this court said: “The plea of prescription of 10 years is attempted to be sustained by showing that defendant and its author in title have been in possession of the property for more than 10 years prior to the filing of. this suit, May 9, 1912. But the state of Louisiana owned the property from the year 1885 until it sold the same through the auditor of public accounts, representing the state, September 1, 1909, under Act No. 80 of 1888, as amended by Act No. 126 of 1896. Prescription does not run against the state. Prescription was suspended during the time that the state was.the owner of the property; and 10 years have not elapsed since the state parted with title in favor of plaintiff and its author. The plea of prescription is overruled.”
 

 For the reasons assigned, the judgment appealed from, decreeing that plaintiffs are the owners of the property here involved, is affirmed, appellants to pay all costs.
 

 O’NIELL, C. J., is recused.