**FOREST LAWN LOT OWNERS ASS'N v. STATE et al.**

No. 14469.

Court of Civil Appeals of Texas. Dallas.

March 14, 1952.

Rehearing Denied May 9, 1952.

Eades & Eades, Dallas, for appellant.

Price Daniel, Atty. Gen., Clinton Foshee and William S. Lott, Asst. Attys. Gen., Henry Wade, Dist. Atty., of Dallas County, John J. Fagan, Asst. Dist. Atty., C. A. Mattay and Geo. S. Peabody, Dallas, for appellees.

CRAMER, Justice.

Forest Lawn Lot Owners Association, a corporation, hereafter called "Lot Owners," brought this suit against the State of Texas, hereafter called "State," under authority of House Concurrent Resolution No. 77, 51st Legislature, Regular Session of 1949.

The action is for damages for the taking, damaging and destruction of plaintiff's property for public use by the State without adequate compensation, in violation of Art. 1, sec. 17 of the Constitution of the State of Texas, Vernon's Ann.St. Lot Owners alleged its ownership of certain lands in Dallas County, Texas, and its rights and interests in other lands adjacent thereto, plus its contractual rights to part of the sales price of adjacent lands. Lot Owners alleged that on July 2, 1938 the State took for public use, as a highway right-of-way, a strip of land containing 4.44 acres out of the lands owned by Lot Owners. The petition sought damages for such taking in three distinct particulars, namely: (1) The cash market value of the 4.44 acres of land actually taken; (2) damages to the remaining lands of Lot Owners which had no actual sales value but which did have a special value to Lot Owners, such damages to be measured by the difference in the special value of such remaining lands to Lot Owners immediately before, and immediately after, the taking; and (3) damages to the contractual and incorporeal rights of Lot Owners in adjacent lands which were injuriously affected by such taking.

Defendant State sued over against the County of Dallas, hereafter called "County," and Forest Lawn Burial Park, Inc., hereafter called "Burial Park," and the County sued over against Burial Park.

Upon trial to a jury, after Lot Owners had rested its case, the district judge sustained defendant's motion for an instructed verdict, and rendered a take nothing judgment against Lot Owners; from which judgment this appeal has been duly perfected.

Lot Owners brief seventeen points and the State, County and Burial Park seven counter points. They will be considered in groups as briefed.

Points 1 and 2 in substance assert error of the trial court in holding as a matter of law that Lot Owners, (1) had no rights, titles or interest in the lands in controversy at the time of the taking of the right-of-way by the State; (2) that Lot Owners' rights, titles and interest in the lands involved here, originally acquired in 1933, were divested out of Lot Owners in a receivership proceeding in 1937, by Oliver Letot against E. E. Widner and Forest Lawn Cemetery and Mausoleum. Lot Owners was not a party to such suit. The points are countered (counter point 1), that the Letot receivership did not divest Lot Owners of its rights, titles and interest in the lands in controversy. The record material to these points shows that Oliver Letot in 1922 had title to all the land located in the cemetery and at that time conveyed such land to E. E. Widner for a total consideration of $30,000, payable $6,000 cash, four vendor's lien notes of $5,000 each and a fifth vendor's lien note for $4,000. Widner retained in the deed an express vendor's lien and also took a deed of trust to secure the notes. On December 18, 1922 Widner and wife conveyed the property to Forest Lawn Company,—now Forest Lawn Cemetery and Mausoleum —subject to Letot's vendor Lien and on April 24, 1923 Forest Lawn Company conveyed "All of the walkways, parks, park reserves and private driveways in the burial park now or hereafter to be made, in accordance with the plat above described, and any and all other plats and dedications in the future to be made and filed, with reference to the burial park * * *" to appellant Lot Owners. (See note 1.)

In July 1935, Letot and wife filed cause No. 16260E, styled Oliver Letot et al. v. E. E. Widner et al., in the 101st District Court, for foreclosure of their vendor's lien by reason of default in payments thereon. The relief sought in the petition included the fixing of a vendor's lien on all cemetery land which had not theretofore

1. In such conveyance the Lot Owners also undertook to maintain perpetual care of the cemetery and Burial Park agreed to pay over into such trust fund administered by the Lot Owners 15% of the sale price; such sum to be placed in the perpetual care fund; such fund to be administered under a full written agreement then in existence as to its operation. See Art. 925, V.A.T.S. It is under this conveyance that the Lot Owners assert their claims against the State.

been sold for burial purposes. They also sought the appointment of a receiver. The judgment, material here, recites that the principal, interest and attorney's fees are secured by vendor's lien expressly retained in the deed from Letot and wife to Widner; that Letot is entitled to priority and preference out of the proceeds of the sale of the property in payment of his claim, the balance after payment of such claims to be paid to the Forest Lawn Cemetery and Mausoleum. The judgment then ordered the property sold by the receiver at a private sale to a corporation duly organized for the purpose of engaging in and transacting the business of a perpetual care cemetery, or some other corporation committed or authorized to own and operate a perpetual care cemetery. " * * * and the conveyance thereof shall be made subject to and subordinate to the dedication of such property for cemetery purposes and to the rights and titles of all persons ownings lots or plots therein. * * *"

In April 1937, the receiver conveyed the cemetery property, including all lands herein claimed to be owned by Lot Owners, to Burial Park for $10,000 cash plus an obligation to make payments to the perpetual care fund. In July 1938, Burial Park conveyed the 4.4 acres of land involved here to the State for right of way purposes. In October 1948, Lot Owners recovered judgment in cause No. 11863 in a District Court of Dallas County against Burial Park for title and possession to certain lands described in the plat and dedication of the cemetery which included the 4.4 acres here involved, and "All of the walkways, parks, park reserves and driveways . * * *" in the Burial Park.

Appellee State asserts title on the theory that Lot Owners' rights and title were wiped out and destroyed by the receivership suit for the reason that such suit was based upon a vendor's lien and a reserved superior title in Letot through whom the State thereafter obtained its title. The Lot Owners contend that the holders of the original vendor's lien, when default occurred in the payment of the purchase money notes, were put to an election as to whether or not they would (1) sue for their debt and foreclosure of their lien; or (2) if the purchaser or those holding under it refused to deliver possession, sue in trespass to try title to recover the land; and when they elected to sue, as they did, for foreclosure of their lien and thereafter prosecuted such foreclosure suit to final judgment, such election was binding on them and they were thereafter forever barred from claiming the alternative right under their superior title. 43 T.J. 337, Vendors and Purchasers, sec. 195–7, inclusive, and 9 T.J. Ten Year Supp., p. 560–1, inclusive, and cases there cited.

The final judgment in the foreclosure proceeding provides (cause 16260E): "And no jury having been demanded, said cause and all matters of fact as well as of law in controversy therein were submitted to the court; and the court having heard the pleadings, the evidence and argument of counsel, finds and concludes as follows: That plaintiff Oliver Letot is entitled to recover of and from the defendant E. E. Widner the sum of $7,025.00, with interest thereon from the 2nd day of October 1932, at the rate of six per cent, together with ten per cent attorneys' fees as provided for in the notes described in plaintiffs' petition, and that the amount of said principal, interest and attorney's fees is secured by vendor's lien expressly retained in the deed from Oliver Letot and wife Inez Letot to E. E. Widner, dated October 2nd, 1922 and recorded in Vol. 970, page 49, of the Records of Deeds of Dallas County, Texas, upon the property described in plaintiffs' petition, except 37.1 acres thereof heretofore released by said plaintiff Oliver Letot; * * * That all the land described in plaintiffs' petition was dedicated for cemetery purposes by certificate and declaration of dedication executed by Forest Lawn Company, dated January 17th, 1923, and duly filed and recorded in the offices of the County Clerk of Dallas County, Texas, and recorded in Vol. 2, page 319, Map Records of Dallas, Dallas County, Texas, and that said 149.73 acres of land thereby became irrevocably dedicated to cemetery purposes, and that thereafter said Oliver Letot released from said vendor's lien 37.1 acres of said land,

set out and described in six releases duly recorded in the Deed Records of Dallas County, Texas, and that said released portion except 10 acres thereof sold to the City of Dallas, was surveyed and subdivided into sections, blocks, lots, avenues, walks and subdivisions, with descriptive names and numbers, and many lots have been sold and used for the permanent interment of the remains of deceased persons, and that the rights of the owners of said lots and burial plots have been permanently fixed and established and are entitled to be preserved and protected, and such rights shall in no manner be disturbed or affected by this judgment but shall be and remain inviolate; that said cemetery has been established, maintained, operated and conducted as a perpetual care cemetery, as now defined by law; that said defendant Forest Lawn Cemetery and Mausoleum has failed to comply with the requirements of law relative to perpetual care cemeteries and has failed to deposit in its perpetual care fund, as provided by law and under the provisions of its contracts with lot owners, the sum of $21,879.87 heretofore accrued, and that said Forest Lawn Cemetery and Mausoleum is indebted to said perpetual care fund in said sum; that said defendant is insolvent and unable to maintain and operate said property as a perpetual care cemetery and that the best interests of the lot owners therein require that said property be sold to a corporation organized for cemetery purposes, to be operated as a perpetual care cemetery, and that the purchaser thereof be required to establish a perpetual care fund in cash or legal securities in accordance with the provisions of law, out of the proceeds of the future sales of lots and burial spaces in said cemetery."

Said judgment also provides as follows: "It is further ordered, adjudged and decreed by the court that the plaintiff Oliver Letot may have his execution against defendant E. E. Widner for the amount of his judgment, less such amount as he may receive under the terms hereof, and that the defendant Republic National Bank and Trust Company have its execution for the amount of its judgment herein rendered against defendant Forest Lawn Cemetery and Mausoleum, less such amounts as it may receive from the funds on hand and realized from the sale of said properties."

▇ Appellee State in its briefs asserts and reasserts that the receivership proceeding here was not a foreclosure proceeding, but was an assertion of a superior title by Letot and that the cemetery association purchased the title of Letot. The record does not sustain such contention. Letot did not rescind the sale of the land under the theory of his superior title and seek to recover the land for himself, but sought the equitable remedy of foreclosure through receivership wherein he received the proceeds of the foreclosure sale as a credit upon the original notes. Such election barred his right to sue for the land itself under his superior title as vendor. 43 Tex.Jur. 237; Rooney v. Porch, Tex.Com.App., 239 S.W. 910; Carey v. Starr, 93 Tex 508, 56 S.W. 324; Douglass v. Blount, 95 Tex. 369, 67 S.W. 484; 58 L.R.A. 699; Maverick v. Perez, Tex.Com. App., 228 S.W. 148; Zeigler v. Sawyer, Tex.Civ.App., 16 S.W.2d 894; Roth v. Connor, Tex.Civ.App., 25 S.W.2d 246. Points 1 and 2 are sustained.

Point 3 asserts error in the court's granting the State's motion for instructed verdict in the face of the record showing that the appellant, Lot Owners, was the owner of the lands and rights involved under deed from Burial Park. Appellee counters that the Burial Park exercised its right to re-enter the walks, parks, park reserves, etc. (which included the 4.4 acres involved in the right-of-way), thereby divesting Lot Owners of any title it might have had under its original deed; also that the take nothing judgment was correct because Lot Owners breached some of the conditions in the original deed to Lot Owners; and after such breach the Burial Park exercised its right of re-entry to the parks, park reserves, walkways, etc., thereby divesting Lot Owners of any title they might have had, and further that such facts are undisputed in the evidence.

At the outset the record shows that Lot Owners was not a party to the receivership suit.

The evidence shows that Burial Park conveyed the lands involved to Lot Owners by written instrument dated April 24, 1923, which instrument contained certain conditions, rules, regulations (43 in all), perpetual care provisions, declarations, etc., those material here providing:

"Rule 33 provides that the income from the perpetual care fund shall be used for the maintenance and upkeep of the Burial Park."

"Rule 34 was as follows: '34. It shall be the duty of the said trustee on behalf of the lot owners to see that the corporation sets aside and provides for said care fund according to this instrument in writing, and to properly invest said fund, and having the income therefrom properly applied towards the maintenance, care, repair and cleaning of said Burial Park, including private driveways, walkways, hedges, buildings, chapels, spaces, lots, parks, park reserves, graves, and all other property in or connected with said Burial Park.'"

Such instrument also provided that a violation of the duties of Lot Owners would give Burial Park the "right of re-entry, repossession and divestiture of title as to the property affected by such breach, as well as its right to enforce its remedy, either of rescission or of specific performance * * *", etc.

The oral evidence on this question offered by the State in addition to the above, was in substance as follows: One of the officers of the Lot Owners testified he had known the cemetery property and has been a member of Lot Owners since 1926 or 1927; the cemetery had been beautified with shrubbery, grass, gravel, etc., and was well kept prior to 1938; that he could not get anything done by the trustees of the association from 1938 until about three or four years ago; that it was kept up by others during the interval since the Lot Owners did not have and could not get funds to do anything with; that Lot Owners did not function as a corporation until 1946, and the only money used was by the individual lot owners and not from a perpetual care fund; the perpetual care fund was not turned over to Lot Owners and he assumed that Burial Park did all the upkeep, etc., since 1922. A trustee of Lot Owners testified he had been familiar with the cemetery since 1933 and that the roads, shrubbery, etc., were in good shape from 1933 to 1938, the year the Highway was put through the cemetery; that Lot Owners did not function from 1933 to 1946; that the Burial Park paid for the upkeep since 1937. The cemetery company maintained it from 1933 to 1937, the year Loudermilk bought it (Loudermilk was President of Forest Lawn Burial Park); that Lot Owners did not comply with the rules and regulations as to maintenance and upkeep from 1933 to 1946. Another trustee of Lot Owners testified that she had bought a lot in the cemetery in 1926 and has been familiar with the cemetery since that date; that it was maintained not by Lot Owners, but, she imagined, by the cemetery owners; that the only money she ever received from Lot Owners was $143 and that $21,000 of the perpetual care fund had disappeared.

Another witness for Lot Owners testified that Loudermilk bought the cemetery in 1937; planted vines, shrubbery, and put in a water system; spent around $25,000 on it; that Loudermilk and not Lot Owners did all the mowing.

The Letot foreclosure judgment in evidence provided that Forest Lawn Cemetery and Mausoleum had failed to deposit $21,879.87 in the perpetual care fund.

■ Considering the record as a whole, the evidence did not undisputedly, as a matter of law, show that Lot Owners had breached the conditions of the conveyance of the property to them. The evidence however, in our opinion, did raise a jury question as to whether or not such conditions were breached and, if so, other complementary issues with reference to the forefeiture and re-entry by the Burial Park. 12 Tex.Jur., p. 125, Covenants and Conditions, sec. 82; 14 Tex.Jur. 880. Point 3 is therefore, for the reasons stated, sustained.

Points 4 and 5 assert that the trial court erred in holding as a matter of law that Lot Owners were guilty of laches in the bring-

ing of this suit and therefore no jury question was present. The State's counter point was that the record shows laches as a matter of law.

The record shows that the 4.4 acres of land taken by the State and the resulting damage sought to be recovered by Lot Owners accrued when the work was started by the State through the State Highway Department, after the Burial Park had deeded such 4.4 acres of land to the State. Such work began July 22, 1938 and thereafter proceeded until completion of the highway over and across said 4.4 acres of land.

 This action against the State is of such nature as to require Lot Owners to secure permission from the Legislature as a condition precedent to its maintaining this suit. The record shows that Lot Owners, although diligent, was unable to secure the necessary permission until the passage of H.C.R. No. 77 by Mangum, by the 51st Legislature, Regular Session, 1949. This suit was filed within a very short time thereafter. Under such record the question raised must be decided against the State, unless the action is barred because some alternate remedy such as by injunction against the agents of the State was available, and further that it was mandatory for Lot Owners to pursue such alternate remedy. In our opinion such defensive alternate remedy would have to be presented by the State as a defense on the trial on the merits of this case. Such defense not having been affirmatively presented, there is no error on the face of the record. This present action is for the value of the land wrongfully taken and actual damage to the balance of the land owned by Lot Owners. The Highway Department knew, or was legally bound to know, when they went through this cemetery that if they didn't have a deed or other conveyance to them of the 4.4 acres of land used in the highway from the true owners thereof, they would be answerable to the true owners thereof for the proper measure of damages to such owners. Points 4 and 5 are sustained.

Points 6 to 10 assert error in sustaining the State's motion for instructed verdict for the reason that the evidence raised fact issues for the jury as follows: (a) cash market value of the 4.4 acres of land; (b) the difference in the cash market value of the remaining lands before and after the taking, or, if no cash market value, then such value as it actually had to Lot Owners; (c) the loss or damage to Lot Owners' contractual rights in the land involved, since such loss, injury and damage caused by the State's appropriation of such land is shown by the evidence, and/or the evidence was sufficient to raise a jury issue thereon.

The evidence on such contractual rights and their value was in substance that under the original contract and under the judgment in the Letot foreclosure, Lot Owners were to receive from Burial Park 15% of the sales price of lots sold by Burial Park, and after April 22, 1937, 5¢ per sq. ft. in addition, until the sum of $21,879.87 was paid. The evidence further disclosed that Burial Park was making every effort to sell lots, and expended large sums to promote such sales; that the highway through the cemetery made the lots unsaleable; that Lot Owners would have received $8.33 per lot sold. There was also evidence, but excluded by the trial court, that without the highway through the cemetery, some 1,500 to 2,000 spaces would have been sold in 1928 and through to the time of the trial.

The State countered that the damages claimed were too uncertain and speculative, not a separate item of recovery.

 In our opinion the measure of damages when submitted to the jury would be the difference in the value of the contractual rights before and after the taking of the 4.4 acres by the State.

 . Art. 1, sec. 17, of our Constitution provides for compensation for property taken. Such compensation includes not only for a physical thing capable of ownership or possession, but embraces any legal right which the owner may have in connection with the land at the time of the taking. 16 T.J. 860; 18 Am.Jur. 715 and 790; City of La Grange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243; Houston N. Shore Ry. Co. v. Tyrrell, 128 Tex. 248,

98 S.W.2d 786, 108 A.L.R. 1508. Points 6 to 10, inclusive, are sustained.

Points 11 to 14, inclusive, assert error in the granting of the State's motion for instructed verdict, based on the trial court's holding, as a matter of law, that Lot Owners were not entitled to recover for the loss and damage to its contractual rights incident to the lands appropriated and damaged, since the evidence raised a jury issue as to such contractual rights and a loss thereto when the 4.4 acres of land was taken by the State.

The record shows that Lot Owners had contractual rights (15% of the proceeds from the sale of lots, plus an additional 5¢ per sq. ft. sold, until $21,879.87 was paid to Lot Owners), which amounts the Lot Owners were charged with using and administering in the perpetual care of the graves of deceased members of their families. The evidence raises the issue as to damage to such contractual rights by the taking of the 4.4 acres for road purposes. The original conveyance and the rules establishing the perpetual care fund obligate the Burial Park to pay 15% of the sale price of such lots sold by them to Lot Owners and it is the duty of the Lot Owners to see that Burial Park pays such sum to it for such purpose. The final judgment in the receivership suit obligated the Burial Park to make such payment to Lot Owners for such perpetual care fund, administered solely by Lot Owners. Points 11 to 14, inclusive, are sustained.

Points 15 and 16 complain of the trial court's refusal to allow Lot Owners to introduce evidence pertaining to the value of its contractual rights incident to the land involved, asserting that the evidence would, if admitted, raise an issue of fact for the jury as to the value of such rights. The evidence appears in the statement of facts and in our opinion was admissible for the purpose offered. Points 15 and 16 are sustained.

Point 17 asserts error in sustaining the motion for instructed verdict on the ground that the State had title to the land under the five and ten-year statutes of limitation. This suit is one for damages for the value of the land taken, and, to the remainder not taken, and is not a suit for the title to the land. It was necessary before the filing of this suit to secure permission to do so from the Legislature of the State of Texas. Lot Owners assert, and offer proof of, diligence in securing the legislative permission, which was not granted until shortly before this suit was filed. Limitation did not begin to run until the suit could be filed. Point 17 is sustained.

For the reasons stated, the judgment below is reversed and the cause is remanded to the trial court for a new trial not inconsistent with this opinion.

Reversed and remanded.

## On Motion for Rehearing

Rehearing denied.

BOND, Chief Justice (dissenting).

After carefully considering appellees' motion for rehearing and our original opinion, the judgment of the trial court should be in all things affirmed. In the original opinion, to which I then concurred and to which I now, on this motion for rehearing, enter my dissent, we held that when Oliver Letot filed the suit in 1935 against E. E. Widner, he thereby elected to foreclose his vendor's lien on the land involved in this suit, and that such election effectively barred his right to sue for the land itself under his superior title. There was no occasion for such holding, inasmuch as appellees do not contend that Letot ever attempted to recover the land for himself under his superior legal title. Appellees' contention, which I believe sound, is that the Letot suit was brought to foreclose the express vendor's lien which he had retained in his deed when he originally sold this land to Widner. Widner, the original vendee, had conveyed this entire tract of land to the Forest Lawn Company, which company was to operate thereon the Forest Lawn Cemetery. This Company in turn allegedly conveyed the parks, park reserves, walkways, etc., in the cemetery, not the realty, to appellant Lot Owners Association in 1923. Appellant was not a party to the foreclosure suit brought by Letot, and for this reason it contends that such suit did

not divest it of its interest in the lands in controversy. However, it is fundamental that a subvendee of land does not have to be a party to a foreclosure suit between the vendor and original vendee. This was the holding of our Supreme Court in the early case of Foster v. Powers, 64 Tex. 247, which case has been consistently followed by our courts to the present time. Other cases to the same effect are Hollis v. Smith, 64 Tex. 280; Bradford v. Knowles, 86 Tex. 505, 25 S.W. 1117; Russell & Seisfeld v. Kirkbride, 62 Tex. 455; Cleveland State Bank v. Gardner, 121 Tex. 580, 50 S.W.2d 786; Reed v. Staley, Tex. Civ.App., 139 S.W.2d 851; Williams v. Coleman-Fulton Pasture Co., Tex.Civ.App., 157 S.W.2d 995 (error refused w.o.m.); Revard v. Wood, Tex.Civ.App., 156 S.W.2d 561 (error refused w.o.m.). See also 14 Texas Law Review 94.

The holding in the majority opinion to the effect that the appellant, Lot Owners Association's title and interest in the land in controversy was not divested by the Oliver Letot foreclosure suit, is contrary to the holdings of the Supreme Court and other courts in Texas above cited. Under these authorities, Letot retained title to the land when he retained the express vendor's lien, and the title did not pass to Widner, the original vendee, until the purchase money was paid. The purchase money was never paid by Widner; hence he did not acquire title, therefore could have conveyed none to the Forest Lawn Company, nor could the Company have conveyed title to appellant Association. By the foreclosure suit and resultant sale to the third party, the purchaser acquired whatever right the vendor had in the land. I cannot say that the established rule of law should in any way be altered merely because the land involved in this case had been perpetually dedicated as a cemetery.

When Letot foreclosed his express vendor's lien, and the cemetery property was later conveyed by the trustee to the corporation, organized for the purpose of operating a cemetery, this corporation acquired the legal title to all of the property. Even though the appellant Lot Owners Association was not a party to that suit, its right, title and interest in and to the land involved was thereby divested, and the corporation could have had it so declared by bringing a trespass to try title suit against the appellant. Letot having elected to affirm the contract and foreclose his lien on the property, barred him from seeking to rescind the sale and recover the land for himself, as held in the majority opinion, and the appellees are not contending that Letot could have exercised both of these rights; nor is it contended that Letot sought to rescind the sale and to recover the land. The majority opinion apparently misconstrued the State's contention in this connection, and seems to interpret the record as showing that Letot attemped to exercise both of these remedies.

The appellee purchased the 4.4 acres of land here involved as a right-of-way from the purchaser at the foreclosure or receiver's sale. The appellee's grantor, having acquired all of the title then in the original grantor or the original grantee, the appellant Association's title and interest was wiped out and divested by the Letot foreclosure suit, hence it did not own any of the land at the time the State acquired the right-of-way in 1938, and it could not now maintain an action for damages as the result of the alleged taking by the State.

Furthermore, the holding of the trial court should be affirmed for the reason that the record conclusively shows that the appellant Association had breached the conditions of the conveyance to it, as set out in the instrument entitled "Rules and Regulations." Also, under the record, appellant's grantor, Forest Lawn Company, had exercised its right of re-entry to the land claimed by the appellant, thereby divesting any title which appellant might have had. The majority opinion summarizes the uncontroverted evidence to the effect that appellant Association did not see to it that the cemetery corporation set aside a part of the proceeds of sales to the Perpetual Care Fund, and that it did not maintain and keep up the cemetery proper, or the parks, park reserves, walks, etc.; but, that it was the corporation and its successors that maintained and kept up the cemetery proper, as well as all of the land that is being

claimed by appellant. Yet, it will be seen, the majority opinion makes the erroneous holding that the evidence did not undisputedly show that appellant Association had breached these conditions, but merely raised a jury question as to whether they had been breached. There is no evidence that these particular conditions have not been breached, nor that the corporation and its successors have not re-entered the land for the purpose of maintaining it. In my opinion, the record shows, as a matter of law, that the Lot Owners had breached the conditions of the conveyance and the Company had exercised its right of re-entry to the land, thereby divesting any title which appellant Association had. Jeffery v. Graham, 61 Tex. 481; Teague v. Teague, 22 Tex.Civ.App. 443, 54 S.W. 632; Hudson v. Caffey, Tex.Civ.App., 179 S.W.2d 1017 (error refused w.o.m.); Rosek v. Kotzur, Tex.Civ.App., 267 S.W. 759; Gulf, C. & S. F. Ry. Co. v. Dunman, 74 Tex. 265, 11 S.W. 1094. If, however, the appellant Association acquired some character of title to these lands, which I am of the opinion they did not (because of the express vendor's lien retained by Letot as related above), all of such right, title and interest were divested by their failure to perform the conditions and by the Company's re-entry upon the land.

Then, too, I am of the opinion that the State of Texas can acquire title to a right-of-way by prescription, the same as counties. The record here conclusively shows that the State acquired this 4.4 acres for right-of-way purposes more than ten years before appellant instituted this suit, which is a sufficient period of time for the acquisition of title by prescription. I have been unable to find any Texas case holding that the State can acquire title to land by prescription, but the courts are uniform in holding that counties (subdivisions of the State) can acquire title under the doctrine of prescription. Turner v. Live Oak County, Tex.Civ.App., 107 S.W.2d 1103, error dismissed; Black v. Terry County, Tex. Civ.App., 183 S.W.2d 685; Vidaurri v. Martinez, Tex.Civ.App., 260 S.W. 651; Martinez v. Vidaurri, Tex.Com.App., 275 S.W. 999. Thus, if the public can acquire

prescriptive right in roads of counties, it would seem consistent that the State or general public could acquire such rights. The Supreme Court of Louisiana has so held in the case of Ward v. South Coast Corp., 198 La. 433, 3 So.2d 689. Under the record here, the State having had possession of, exercising jurisdiction and control over the 4.4 acres of land for a period in excess of ten years, the State has acquired title to this land by prescription; hence appellant's claim for damages is barred by limitation.

The record evidence further shows that several members of appellant Association knew, as far back as 1938, that the State Highway Department was constructing a highway across the cemetery proper; yet none of them made any effort to enjoin the State from bringing the road across the property in question. In such event it would not have been necessary for them to obtain legislative permission before seeking such injunctive relief. They not having done so, but having waited until the State had spent a large amount of money on this project before they sought legislative permission to bring the present action, such delay was unreasonable and constitutes laches on the part of appellant and its members; hence should not be permitted to take advantage of the State at this late date and make it pay twice for the rights it acquired in good faith. The majority opinion holds that laches would not apply in this case, unless it was mandatory for appellant to seek such injunctive relief. In my opinion, that holding is unsound and contrary to equitable principles.

A careful reading of the record here presented conclusively shows that as to all elements of damage which appellant sought to recover, it had plead one measure of damages and attempted to prove an entirely different measure of damages. There is a fatal variance between the pleadings and proof as to the value of the 4.4 acres of land acquired by the State for right-of-way purposes, and as to the value of the remaining land which was not taken. Appellant was therefore not entitled to have such issue submitted to the jury and the trial court was correct in granting appel-

lees' motion for instructed verdict. The majority opinion in holding that appellant Association was entitled to recover for the damage to its contractual rights because of the acquisition of the 4.4 acres of land by the State, fails to take into consideration the true nature of such contractual rights. The appellant Association does not claim any of the land contained in the cemetery proper, which is property owned by the Forest Lawn Burial Park, Inc., and which is the land subject to being sold for burial purposes. Appellant claims that it is entitled to the income or interest from a part of the proceeds of the sale of lots by Forest Lawn Burial Park, Inc. It is not entitled to the Perpetual Care Fund, as it has been judicially determined by a District Court of Dallas County, Texas, that the Forest Lawn Burial Park, Inc. was entitled to the fund and that the appellant Association was entitled only to the interest from such fund. Too, it could not use the income from this fund as its own, or in any manner that it saw fit, but could only use it for the purpose of upkeep and maintenance of the Association. It was not entitled to receive the amounts or proportionate part of the sales price as set out in the majority opinion. Appellant in seeking to recover for the loss and damage to its contractual rights, necessarily has to rely upon, and prove damage to the Forest Lawn Burial Park's cemetery business. There was no established business being conducted in 1938, at which time the State acquired the land through the cemetery, upon which to predicate a claim for the loss of business to the cemetery owners, much less on which to predicate such a claim against appellant. The evidence shows that the cemetery company was bankrupt in 1935 and that the cemetery was operated by a receiver from 1935 to 1937. The success of conducting a cemetery business, the number of its lots that would have been sold, and the amount that would have been de-

posited to the Perpetual Care Fund, depended on the ability of the cemetery owners in conducting such business, which business was completely foreign to and beyond the control of appellant Lot Owners Association. A careful review of the testimony which the majority opinion holds should have been admitted, will readily show that it would be impossible for anyone to testify to any degree of accuracy or certainty as to the number of burial lots that could have been sold had it not been for the construction of the highway through it. It would be pure speculation for anyone to say that the construction of the highway was the reason that the cemetery was not a successful business, or to say whether it was caused by something within the cemetery company itself, or by the owners' inability to operate it. Such an element of damage as that being sought is too uncertain and speculative to be recoverable in an action of this nature. Future rights, business losses, and profits are not recoverable where the whole of the estate is taken. "Homestead rights, business rights and all other consequential rights incident to possession of physical properties, are not property taken, damaged or destroyed appertaining to condemnation of real estate as a whole. Such rights must be subservient to the public's right of eminent domain." Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575, 584, writ refused.

The appellant Association, by its own neglect and laches in failing to institute this suit, could not toll the statute of limitation for this long period of time. The action of the trial court in granting appellees' motion for instructed verdict was correct; hence appellees' motion for rehearing should be granted, the original opinion withdrawn, and the judgment of the trial court affirmed. I respectfully register my dissent.