| | | |
|---|---|---|
| **WORLD WAR II THEATRE, INC.** | * | **NO. 2025-CA-0398** |
| | * | |
| **VERSUS** | | **COURT OF APPEAL** |
| | * | |
| **NORMAN WHITE, CHIEF FINANCIAL OFFICER AND DIRECTOR OF FINANCE, CITY OF NEW ORLEANS; ERROLL G. WILLIAMS, ASSESSOR, ORLEANS PARISH; AND LAWRENCE E. CHEHARDY, CHAIRMAN, LOUISIANA TAX COMMISSION** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |
| | * * * * * * * | |

APPEAL FROM
BOARD OF TAX APPEALS
NO. L01363,
Judge Cade R. Cole,
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Paula A. Brown, Judge Rachael D. Johnson)

Cheryl Mollere Kornick
Robert S. Angelico
Tyler D. Trew
LISKOW & LEWIS, APLC
701 Poydras Street, Suite 5000
New Orleans, LA 70139

     COUNSEL FOR PLAINTIFF/APPELLEE

John J. Weiler
Reese F. Williamson
WEILER & REES, LLC
909 Poydras Street, Suite 1250
New Orleans, LA 70112

     COUNSEL FOR DEFENDANT/APPELLANT

**JUDGMENT VACATED;
REMANDED WITH INSTRUCTIONS**

**FEBRUARY 02, 2026**

This is a tax dispute. Appellant Erroll G. Williams, in his capacity as Assessor for the Orleans Parish Assessor's Office (the "Assessor"), appeals the May 12, 2025 judgment rendered by the Board of Tax Appeals, State of Louisiana, Local Tax Division (the "BTA"). The judgment found that Appellee, World War II Theatre, Inc. (the "Theatre"), was exempt from the taxes it paid under protest for City of New Orleans 2022 Original Business Personal Property Tax Bill No. 102102511P in the amount of $183,596.99 and City of New Orleans 2022 Original Real Estate Tax Bill No. 102103307 in the amount of $370,425.44 (collectively, the "2022 taxes"). After calculating the accrued interest on the monies paid under protest and placed into escrow, the BTA awarded the Theatre refunds in the amounts of $186,571.26 and $376,426.33. For the reasons that follow, we vacate the BTA's May 12, 2025 judgment and remand the matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Many of the facts leading to the instant appeal were previously recited by this Court in *World War II Theatre, Inc. v. White*, 24-0474 (La. App. 4 Cir. 2/18/25), 409 So.3d 275 ("*World War II 1.0*"). We will use portions of that

1

recitation here. The property at issue is the Higgins Hotel & Conference Center (the "Hotel"), which is wholly owned and operated by the Theatre. "The Theatre is a 501(c)(3) nonprofit corporation,[1] whose sole shareholder is National World War II Museum, Inc. ([the] "Museum")." *World War II 1.0*, 24-0474, p. 2, 409 So.3d at 278. "The Theatre owns the Hotel[,] which is located across the street from the Museum." *Id*. "The Theatre filed an application in 2020 for tax exempt status of the Hotel for tax year 2021, which was denied by the Assessor." *Id*. The Assessor then issued to the Hotel tax bills for property and business personal property taxes for the 2022 tax year, both of which had a delinquency date of March 16, 2022. "On or about February 15, 2022, the Theatre paid the taxes under protest." *Id*. "Pursuant to La. R.S. 47:2134(C)(1)-(2),[2] the Theatre notified the tax collector of its intention to file suit." *Id*.

---

[1] Found in the Internal Revenue Code at 26 USCA § 501, the statute defines, in part, entities that are exempt from Federal income taxes as "[c]orporations . . . organized and operated exclusively for . . . educational purposes . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual . . . ."

[2] La. R.S. 47:21349 (C)(1)-(2) provides,

(1) A person resisting the payment of an amount of ad valorem tax due or the enforcement of a provision of the ad valorem tax law and thereby intending to maintain a legality challenge shall timely pay the disputed amount due under protest to the officer or officers designated by law for the collection of the tax and shall give such officer or officers, notice at the time of payment of his intention to file suit for the recovery of the protested tax. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the assessment shall not be made subject to the protest. The taxpayer shall submit separate payments for the disputed amount of tax due and the amount that is not in dispute and not subject to the protest. Upon receipt of a notice, the protested amount shall be segregated and held by the collecting officer for a period of thirty days.

(2) A legality challenge suit must be filed within thirty days from the date of the protested payment. If a suit is timely filed contesting the legality of the tax or the enforcement of a provision of the tax law and seeking recovery of the tax, then that portion of the taxes paid that are in dispute shall be further deemed as paid under protest, and that amount shall be segregated and shall be further held pending the outcome of the suit. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the tax shall not be made subject to the protest.

2

As more specifically laid out in *World War II 1.0*:

On March 8, 2022, the Theatre filed a [*Petition to Recover Taxes Paid Under Protest* (the "Petition")]. In [the Petition], the Theatre alleged that it [was] entitled to exemption from *ad valorem* taxes pursuant to La. Const. art. VII[, §] 21(B) and had timely filed the application for exemption. The Assessor filed peremptory exceptions and an answer on April 7, 2022. On June 7, 2022, the Theatre filed a motion for summary judgment seeking a judgment that it was entitled to tax exemption for the tax year 2022. On June 15, 2022, the Assessor filed supplemental exceptions of no cause of action, no right of action and prescription alleging that pursuant to La. R.S. 33:2828(D),[3] the Assessor's exceptions should be sustained because the Theatre failed to timely apply for the tax exemption.

On August 11, 2022, the BTA held a hearing on the Assessor's peremptory exceptions. The BTA rendered judgment and denied the Assessor's exceptions of no cause of action, no right of action and prescription. On November 8, 2022, the Assessor filed a cross motion for summary judgment arguing that the Theatre's tax-exempt status should be denied. On December 8, 2022, the BTA held a hearing on both motions for summary judgment. The BTA rendered judgment denying all the motions for summary judgment on March 8, 2023.

The matter proceeded to trial on September 14, 2023. On December 13, 2023, the BTA issued its Order with Written Reasons. The BTA ruled in favor of the Theatre, finding that the Hotel operates in support of the Museum's mission and the Hotel and its amenities are essential to the Museum's charitable purpose. The BTA also held that the Hotel was exempt from Orleans Parish *ad valorem* taxes for 2022, and that the Theatre was entitled to a full refund of the payments paid under protest.

*Id*. at pp. 2-3, 409 So.3d at 278.

In its Written Reasons for the December 13, 2023 Order, the BTA relied on: its interpretation of La. Const. art. VII, § 21(B); the decision rendered in the case of *Hotel Dieu v. Williams*, 403 So.2d 1255 (La. App. 4 Cir. 8/31/81) *aff'd* 410 So.2d 1111 (La. 1982); and the testimony of Steven Watson ("Mr. Watson"),

---

[3] Louisiana Revised Statutes article 33:2828(D), which was later repealed by Acts 2024, No. 422, § 1, effective August 1, 2024, provided at the time the Theatre filed its Petition:

D. Each assessor shall evaluate and grant or deny the request for tax exemption, or grant a partial tax exemption based on the assessed value of that proportion of the property not being used for an exempt purpose, by the first day of August of each year which shall determine the liability for or exemption from taxation for the calendar year. Each determination by the assessor shall be subject to review as provided by law.

President of both the Theatre and the Museum. The BTA noted that when it reviewed the Theatre's federal tax returns, the Theatre reported some of its income as Unrelated Business Taxable Income ("UBTI"), which included revenue from such sources as: weddings; corporate parties; private group reservations; individual guests who did not identify the Museum as their reason for visiting; and revenue from the bars, restaurants and shops located in the Hotel. Mr. Watson testified that the UBTI was merely incidental to the amenities needed for the Hotel to support the Museum.

Mr. Watson then clarified that he had misspoken in an earlier deposition, in which he related that the Hotel was intended to grow the Museum's endowment. He explained that the endowment exists to support the educational, charitable and social purposes of the Museum and was used to fund scholarships, positions and exhibits. However, at the September 14, 2023 trial, Mr. Watson testified that the Hotel was not intended to be a source of funding for the endowment. He then went on to describe exactly how the Hotel supports and benefits the Museum. According to Mr. Watson, the Museum has a number of group programs and is the largest client of the Hotel. The Theatre provides group bookings for the Museum at below-market rates, and does not charge the Museum for the use of its conference center. This helps to facilitate the Museum's International World War II Conference, the largest conference of its kind, with over 35 speakers from around the world and 500 attendees over the course of three days. Additionally, the Museum provides educational residency programs, which include training for teachers and college faculty.

Interpreting La. Const. art. VII, § 21(B), the BTA found that, although the Theatre represented to the IRS that it had income that was either unrelated to its

4

exempt purpose or not substantially related to its exempt purpose, § 21(B) does not require a substantial relationship. Finding Mr. Watson's testimony to be credible, the BTA concluded that: the Museum and its surrounding campus were working to accomplish their mission by becoming a cultural, educational and social institution; the Hotel provided convenient, discounted services to the Museum, was used primarily by the Museum, and was run in a way that prioritizes supporting the Museum's mission; and the Hotel and its amenities were essential to attracting and hosting cultural gatherings and academic symposia.

"The Assessor filed a motion for new trial arguing principally that new evidence, an Internal Revenue Service Form 990 [("IRS Form 990")] for the period July 1, 2021 through June 30, 2022, which was not available at the time of trial, [was] material to whether the Hotel qualifie[d] for the exemption." *Id.* at pp. 3-4, 409 So.3d at 279. On appeal, this Court affirmed the denial of the Assessor's exceptions of no cause of action, no right of action, and prescription; however, finding that the BTA erred when it did not consider the IRS Form 990, we vacated the judgment granting the Hotel tax exempt status and remanded the matter to the BTA for consideration of the IRS Form 990 in rendering a final judgment on the merits. *World War II 1.0*, 24-0474, p. 12, 409 So.3d at 283-84.

Shortly after we published that opinion, on February 27, 2025, the parties held a status conference, where it was stipulated that the matter on remand would be decided on the record—with the addition of the Theatre's IRS Form 990, the Assessor's Appellant Brief, the Theatre's Appellee Brief and the Assessor's Appellant Reply Brief. After considering this new information, the BTA issued another judgment and written reasons on May 12, 2025, finding that although the IRS Form 990 reflected a slightly higher amount of UBTI for the Hotel and that the

5

Hotel turned a profit, it did not change the fact that the large majority of Hotel revenue was related to the Museum's charitable purpose—*ergo*, the Hotel is exempted from *ad valorem* property tax for 2022 pursuant to La. Const. art. VII, § 21(B). The Assessor timely appealed that decision.

The parties appeared before this Court for oral argument on November 3, 2025. Following, on November 18, 2025, this Court issued an order inviting the parties to submit additional briefing to show cause why La. R.S. 33:2828(D) is or is not the controlling law for the matter currently under review by this Court. As we noted in that order, La. R.S. 33:2828(D), was enacted by Acts 2005, No. 342, § 1, effective June 30, 2005, and was still effective at the time the Theatre filed its Petition in the instant matter.[4] The statute provided, in pertinent part, that "[e]ach assessor shall evaluate and grant or deny the request for tax exemption, *or grant a partial tax exemption* based on the assessed value of that proportion of the property not being used for an exempt purpose." La. R.S. 33:2828(D) (emphasis added). Both parties filed supplemental briefs, each arguing that jurisprudence precluded a partial exemption.

## STANDARD OF REVIEW

This Court recently explained, "Louisiana Revised Statutes 47:1435[5] provides the courts of appeal with exclusive jurisdiction to review the decisions or

---

[4] Louisiana Revised Statutes 33:2828 was later repealed in its entirety by Acts 2024, No. 422, § 1, effective August 1, 2024.

[5] Louisiana Revised Statutes 47:1435 establishes:

> A. Except as provided in Article V, Section 5(D) of the Constitution of Louisiana, the courts of appeal shall have exclusive jurisdiction to review the decisions or judgments of the board, and the judgment of any such court shall be subject to further review in accordance with the law relating to civil matters.

> B. The court of appeal where a case would be appealable pursuant to R.S. 47:1436 may exercise supervisory jurisdiction over the case pending before the board in the same manner as provided for in a civil matter pending in a district

6

judgments of the BTA." *Filmore Parc Apartments II v. White*, 24-0475, p. 12 (La. App. 4 Cir. 2/14/25), 418 So.3d 42, 52. "An appellate court applies the manifest error standard of review to the Board's judgment." *Int'l Rivercenter Lessee, L.L.C. v. Robinson*, 22-0428, p. 10 (La. App. 4 Cir. 12/28/22), 355 So.3d 1125, 1132. "That is, an appellate court will not reverse the Board's judgment unless the Board 1. 'failed to correctly apply the law and adhere to procedural standards or' 2. 'the Board's findings of fact are manifestly erroneous in view of the evidence on the entire record.'" *Id*. (quoting *Pinnacle Polymers, LLC v. St. John the Baptist Par. Sales*, 19-310, p. 10 (La. App. 5 Cir. 3/24/21), 316 So.3d 1264, 1271); *see also Int'l Paper, Inc. v. Bridges*, 07-1151, p. 9 (La. 1/16/08), 972 So.2d 1121, 1127-28.

## ASSIGNMENTS OF ERROR

The Assessor offers five assignments of error for our review,[6] which can be narrowed to a single issue—whether the BTA erred in its interpretation and

court within its circuit. The supreme court may exercise supervisory jurisdiction over the board in all of its cases, in the same manner as provided for in civil matters.

C. Upon such review, the courts shall have the power to affirm or, if the decision or judgment of the board is not in accordance with law or is manifestly erroneous on the facts considering the record as a whole, to modify, or to reverse the decision or judgment of the board, with or without remanding the case for further proceedings.

D. If a judgment of the board is to be modified or reversed and one court of appeal judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority shall concur to render judgment.

[6] Specifically, the Assessor asserts:

A. The BTA erred by failing to correctly interpret and apply the legal test to determine whether a property is exempt from ad valorem tax pursuant to La. Const. art. VII, § 21(B).

B. The BTA erred in its interpretation and application of La. Const. art. VII, § 21(B), because it interpreted and applied to constitutional test to grant an ad valorem tax exemption upon a finding that a "majority" of the commercial uses or operations are not unrelated to the exempt purpose of the property owner, rather than the strict requirement set forth in the constitution, as interpreted by the Courts and expressly set forth by the constitutional drafters, which only grants the

7

application of La. Const. art. VII, § 21(B) when it found that the Hotel is exempt from payment of *ad valorem* property tax. However, as we will more fully illuminate in the following discussion, because we find that the BTA erred when it did not apply the more specific statute in effect at the time of its ruling—La. R.S. 33:2828(D)—we will pretermit discussion of the Assessor's putative errors.

## DISCUSSION[7]

In their supplemental briefs, both the Assessor and the Theatre rely on the case of *Johnson v. New Orleans Charities Bldg. Corp.*, 00-2772 (La. App. 1 Cir. 2/15/02), 812 So.2d 741 for that court's interpretation of the Louisiana Constitution of 1974, Article VII, § 21. More specifically, both parties assert that the *Johnson* Court's reading of that portion of the Constitution stands for the proposition that there can be no partial exemption from *ad valorem* taxes for a non-profit entity. At all times pertinent to our review, the relevant portions of Article VII, § 21 provided:

> Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:

---

exemption to a property if "none" of the commercial uses or operations are unrelated to the exempt purpose of the property owner.

C. The BTA erred by interpreting and applying La. Const. art. VII, § 21(B) in direct conflict with the express intentions of the drafters of constitutional test.

D. The BTA erred in its application of the legal standards and burden of proof on Theatre, Inc. in this case, which is the strict construction legal standard and heightened burden of proof applicable in all tax exemption cases.

E. The BTA erred in ruling that the Hotel met the exemption test under La. Const. art. VII, § 21(B) and qualified for an ad valorem tax exemption.

[7] We note that this discussion will refer to documents and information found on government websites. As we explained in *Minor Children v. Roman Catholic Church of Archdiocese of New Orleans*, "this Court . . . [is] empowered to take judicial notice of government websites." 24-0008, p. 10 (La. App. 4 Cir. 8/20/24), 401 So.3d 769, 778 (citing *Breston v. DH Catering, LLC*, 23-0460, p. 25, n.2 (La. App. 4 Cir. 2/5/24), 384 So.3d 953, 968.

8

* * *

(B)(1)(a)(i) Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax; and

* * *

None of the property listed in Paragraph (B) shall be exempt if owned, operated, leased, or used for commercial purposes unrelated to the exempt purposes of the corporation or association.[8]

In *Johnson*, a real estate holding company for a foundation purchased a 10-story building for the purpose of providing virtually free office space to local charities, charging those charities only one dollar per year. Both the holding company and foundation were designated as charitable organizations pursuant to Internal Revenue Code §§ 501(c)(2) and (3), respectively. The holding company also rented space to four commercial businesses—a restaurant, an architectural firm, a dentist's office and a barber shop. After the assessor sent a tax bill levied against the whole property, the holding company paid under protest and appealed to the Orleans Parish Board of Review ("OPBR"). The OPBR ruled in the holding company's favor, finding that it was entitled to a partial exemption for the portion of the building occupied by the local charities. The record revealed that 41.7% of the building was in use by the local charities, while the majority of the building

---

[8] Although no substantive changes were made, this section was amended by Acts 2023, No. 48, § 1, with an effective date of November 20, 2023, and now provides in its current form:

(B)(1)(a)(i) Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and that is declared to be exempt from federal or state income tax; and

* * *

(4)(a) None of the property listed in this Paragraph shall be exempt if owned, operated, leased, or used for commercial purposes unrelated to the exempt purposes of the corporation or association.

was rented to the commercial businesses. After reviewing *Hotel Dieu*[9] and the 1973 Convention transcripts, the First Circuit Court of Appeal espoused its interpretation that "the drafters believed that if for any reason the exemption was found not to apply, it was not to apply to the property in its entirety, not proportionately." *Johnson*, 00-2772 at p. 7, 812 So.2d at 745. However, in its final disposition the appellate court simply offered that "we conclude that a partial exemption from ad valorem taxation, applied proportionately, is not provided for by La. Const. Art. VII § 21(B)." *Id*.

We previously noted that La. R.S. 33:2828 was enacted in 2005—more than three years after the *Johnson* decision and well over twenty years after the *Hotel Dieu* decisions. As the First Circuit later recognized in *Brindisi v. Bd. Of Trustees of La. Dist. Attorneys Ret. Sys.*, "[i]t is presumed that the legislature enacts each statute with deliberation and with full knowledge of all existing laws on the same subject." 14-1167, p. 4 (La. App. 1 Cir. 4/24/15), 170 So.3d 1010, 1013. "Thus, legislative language will be interpreted on the assumption that the legislature was aware of existing statutes, rules of construction, and judicial decisions interpreting those statutes." *Id.* at pp. 4-5, 170 So.3d at 1013. "It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter." *In re Edward Wisner Donation*, 14-0027, p. 11 (La. App. 4 Cir. 9/18/14), 150 So.3d 391, 398.

Mindful of those precepts, this Court has consistently recited that "[t]he starting point in the interpretation of any statute is the language of the statute

---

[9] We find *Hotel Dieu* to be inapposite to the factual considerations now before us; accordingly, we pretermit discussion of that case in this opinion.

10

itself." *IPF22, LLC v. Sholes*, 24-0552, p. 11 (La. App. 4 Cir. 4/3/25), 421 So.3d 89, 98 (quoting *Sebble on Behalf of Estate of Brown v. St. Luke's #2, LLC*, 22-0620, p. 6 (La. App. 4 Cir. 3/6/23), 358 So.3d 1030, 1034). "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. We find that where La. R.S. 33:2828(D) provided that "[e]ach assessor[10] shall evaluate and grant or deny the request for tax exemption, or grant a partial tax exemption based on the assessed value of that proportion of the property not being used for an exempt purpose," this directive was both clear and unambiguous. Furthermore, "because it is presumed that the legislature acts within its constitutional authority in enacting legislation, this court must construe a statute so as to preserve its constitutionality when it is reasonable to do so." *State ex rel. Calwell v. Molina Healthcare, Inc*, 18-1768, p. 10 (La. 5/8/19), 283 So.3d 472, 479 (citation omitted).

The Assessor offers two cases for the dual propositions that: (1) "the constitution is the supreme law of this state, to which all legislative acts must yield . . . . When a statute conflicts with a constitutional provision, the statute must fall." *City of New Orleans v. La. Assessors' Ret. & Relief Fund*, 05-2548, pp. 12-13 (La. 10/1/07), 986 So.2d 1, 13; and (2) "[t]he unconstitutionality of one portion of a statute does not necessarily render the entire statute unenforceable. If the remaining portion of the statute is severable from the offending portion, this court may strike only the offending portion and leave the remainder intact." *State v.*

---

[10] At the time La. R.S. 33:2828 was passed into law, Orleans Parish had seven tax assessors. This was later consolidated into a single assessor in 2011. *See* https://www.nolaassessor.com/wp-content/uploads/sites/80/2023/01/New-Orleans-Assessor.pdf#:~:text=professional%20training%20consistent%20with%20industry%20standards;%20thus%20our%20office%20boasts…&text=In%202011%2C%20the%20voters%20of%20Orleans%20Parish,first%20time%20in%20more%20than%20150%20years.

*Azar*, 539 So.2d 1222, 1226 (La. 1989). Those cases are easily distinuguishable from the matter before us. In both of the cited cases a constitutional provision was directly challenged. That is not the case here. "[A]ppellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed." *Equity Trust Co., FBO 200267986 (59.51%) & 200267988 (40.49%) v. Thorrick*, 23-0779, p. 8 (La. App. 4 Cir. 7/10/24), 399 So.3d 454, 460 (quoting *Sunset Harbour, L.L.C. v. Bush*, 23-0156, p. 13 (La. App. 4 Cir. 9/26/23), 372 So.3d 855, 863. Moreover, "litigants must raise constitutional attacks in the [district] court, not the appellate courts, and that the constitutional challenge must be specifically pleaded and the grounds for the claim particularized." *Id.*

Our research into the legislative history of La. R.S. 33:2828 indicates that it was introduced for the specific purpose of recouping some *ad valorem* tax monies for Orleans Parish. State Senator Ann Duplessis explained to the House Committee on Municipal, Parochial and Cultural Affairs that there had been a proliferation of non-profit organizations in the New Orleans area whose properties were wholly exempt from *ad valorem* taxation.[11] The original bill proposed to simply levy a small fee on each property owned by those entities, but was later amended to its final form to provide for partial exemptions. Working from the presumption that the legislature was aware of the judicial decision in *Johnson, w*e find that the enactment of La. R.S. 33:2828(D) legislatively overruled that decision. Moreover, this Court did not locate a single instance in which La. R.S. 33:2828 was challenged by either the Assessor or any of the taxpayers subject to that statutory scheme in its nearly twenty years of existence prior to its repeal in

---

[11] https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2005/jun/0614_05_MP

2024.  "It is presumed that public officials have properly performed the duties of their office unless the contrary can be shown." *City of Kenner v. Dwyer*, 464 So.2d 824, 825 (La. App. 5 Cir. 1985) (first citing *Vavoline Oil Co. v. Concordia Par. School Bd.*, 216 So.2d 702 (La. App. 3rd Cir. 1968); then citing *Dubois v. Olympic Ins. Co.*, 231 So.2d 714 (La. App. 1st Cir. 1970)).  As a result, we presume that the Assessor was at all times in compliance with La. R.S. 33:2828 for its duration and had formulated some method by which to accomplish the duty to calculate partial exemptions.  Therefore, we remand the matter to allow the BTA and the Assessor to adhere to and apply the directives found explicitly in La. R.S. 33:2828(D), in effect at the time of this litigation, pertaining to partial exemptions.

## DECREE

For the foregoing reasons, we vacate the May 12, 2025 judgment rendered by the Board of Tax Appeals and remand the case for further proceedings consistent with this opinion.

**JUDGMENT VACATED;**
**REMANDED WITH INSTRUCTIONS**